# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MCCARTHY BUILDING COMPANIES, INC., <br>    Plaintiff, <br><br>        v. <br><br> MT. HAWLEY INSURANCE COMPANY, <br>    Defendant. | CV 20-7540 DSF (AFMx) <br><br> Order GRANTING Defendant's Motion for Summary Judgment and DENYING Plaintiff's Motion for Summary Judgment |

Before the Court are cross-motions for summary judgment. Plaintiff McCarthy Building Companies, Inc. moves for summary judgment on its first and third claims for breach of contract and declaratory judgment, respectively. Dkt. 12-1 (Mot.). Defendant Mt. Hawley Insurance Company opposes and cross-moves for summary judgment on all three of McCarthy's claims. Dkt. 28 (Opp'n). The Court deems these matters appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. Mt. Hawley's motion is GRANTED. McCarthy's motion is DENIED.

## I. UNDISPUTED FACTS

Around June 30, 2004, McCarthy entered into a Revised Construction Management Services Agreement with Huntington Beach

Union High School District (the District). PSUF ¶ 1.[1] Under the agreement, McCarthy was to manage various construction projects, one of which was the Huntington Beach High School Modernization project (the Project). Id. ¶¶ 1-2. As construction manager, McCarthy was responsible for coordinating trade contractors and construction sequencing but did not have control over the actual work of each contractor. Id. ¶¶ 4-5.

Around January 22, 2008, Day Construction Company entered into an agreement with the District to complete the Project (the Day-District Agreement or Agreement). Id. ¶¶ 6-7. The Agreement required Day to take out and maintain a Commercial General Liability Insurance policy protecting against, among other things, "[c]laims involving contractual liability applicable to [Day's] indemnity obligations under the Contract Documents, including liability assumed by and the indemnity and defense obligations of [Day]" and "[c]laims involving Completed Operations." Id. ¶¶ 8-10 (first alteration in original). Additionally, the Day-District Agreement obligated Day to "name, on any policy of insurance required" McCarthy as an "additional insured[]." Id. ¶ 11 (alteration in original). The Agreement further provided "[t]he Additional Insured Endorsement included on all such insurance policies shall state that coverage is afforded the additional

---

[1] Citations to PSUF refer to Mt. Hawley's Statement of Genuine Disputes in Opposition to Plaintiff's Motion for Summary Judgment, dkt. 28-2, which incorporates McCarthy's proposed uncontroverted facts and Mt. Hawley's responses to those facts. Citations to DSUF refer to McCarthy's Statement of Genuine Disputes in Opposition to Defendant's Cross-Motion for Summary Judgment, dkt. 31-1, which incorporates Mt. Hawley's proposed uncontroverted facts and McCarthy's responses to those facts. To the extent certain facts are not mentioned in this Order, the Court has not relied on those facts in reaching its decision. To the extent the Court cites to a disputed fact, the Court has found the dispute was not valid or was irrelevant, unless otherwise indicated. The Court has independently considered the admissibility of the evidence and has not considered facts that are irrelevant or based on inadmissible evidence.

insured with respect to claims arising out of operations performed by or on behalf of the insured." Id. ¶ 12.

Day obtained an insurance policy (the Policy) from Mt. Hawley covering a policy period of June 10, 2014 to June 10, 2015. Id. ¶ 13. The Policy covered damages for bodily injury or property damage. Id. ¶ 15. The Policy also provided additional insured coverage to "[a]ll persons or organizations where required by written contract" "with respect to liability arising out of 'your work' for that insured by or for you." Id. ¶ 18 (alteration in original). Day completed its work on the Project by approximately September 1, 2009, and the entire Project was completed and accepted by the District by 2011. DSUF ¶ 15.

On March 26, 2015, Dorothea Hampton filed a complaint against the District in Superior Court, alleging she was injured at Huntington Beach High School when she tripped and fell over a doorstop placed in the ground. PSUF ¶¶ 20-21. The District filed a Cross-Complaint against McCarthy and Day, alleging Hampton's injuries were McCarthy and Day's fault for failing to remove, or account for the removal of, the doorstop. Id. ¶¶ 22-24. On April 14, 2017, McCarthy tendered its defense and indemnity of the action to Mt. Hawley, and, on October 18, 2017, Mt. Hawley agreed to defend and indemnify McCarthy. Id. ¶¶ 26-27. On November 2, 2017, McCarthy was dismissed from the action without prejudice. Id. ¶ 28. Mt. Hawley paid McCarthy's defense fees from when McCarthy was first brought into the action through its dismissal. Id. ¶ 29.

On October 26, 2018, the District filed a Second Amended Cross-Complaint naming McCarthy, Day, and others as cross-defendants. Id. ¶ 34. McCarthy again tendered its defense and indemnity to Mt. Hawley. Id. ¶ 37. Mt. Hawley advised it was investigating the tender and asked McCarthy to provide certain information and documents, including its contracts, any job documents relating to Day's work, and information and documents relating to any work performed by Day for McCarthy. DSUF ¶ 24. The parties dispute whether McCarthy provided some of that information and whether Mt. Hawley had in fact already denied coverage to McCarthy when it requested the

information.  Id. ¶ 25.  The underlying action settled on July 15, 2019.  DSUF ¶ 21.

On August 19, 2020, McCarthy brought the present action asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief.  Dkt. 1.

## II. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.  The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "This burden is not a light one."  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010).  But the moving party need not disprove the opposing party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Rather, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.  If the moving party satisfies this burden, the party opposing the motion must set forth specific facts, through affidavits or admissible discovery materials, showing that there exists a genuine issue for trial.  Id. at 323-24; Fed. R. Civ. P. 56(c)(1).  A non-moving party who bears the burden of proof at trial as to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment.  See Celotex Corp., 477 U.S. at 322.

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  An issue of fact is a genuine issue if it reasonably can be resolved in favor of either party.  Id. at 248.  "[A] district court is not entitled to weigh the evidence and resolve disputed underlying factual

4

issues." Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1161 (9th Cir. 1992). Summary judgment is improper "where divergent ultimate inferences may reasonably be drawn from the undisputed facts." Fresno Motors, LLC v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 988 (9th Cir. 2006)). Instead, "the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (punctuation omitted).

"[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its own merits." Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal quotation marks and brackets omitted). In doing so, the Court must consider the evidence submitted in support of both motions before ruling on each of them. Id.

### III. DISCUSSION

McCarthy argues Mt. Hawley had a duty to defend it and the Day-District Agreement was in effect at the time Hampton sustained injuries. Mt. Hawley disagrees and asserts McCarthy's bad faith claim is barred, its declaratory judgment claim is moot, and any waiver argument is unsupported.

"[I]nterpretation of an insurance policy is a question of law." Waller v. Trucks Ins. Exch., Inc., 11 Cal. 4th 1, 18 (1995), as modified on denial of reh'g (Oct. 26, 1995). Contract interpretation, as a question of law, is often amenable to summary judgment, see Lagrassa v. Burlington Ins. Co., No. 11-CV-2730-JAM-EFB, 2012 WL 5932959, at *3 (E.D. Cal. Nov. 27, 2012), although "[s]ummary judgment may be inappropriate in a contract case if there is a dispute over a material fact necessary to interpret the contract." Kilroy Indus. v. United Pac. Ins. Co., 608 F. Supp. 847, 850 (C.D. Cal. 1985).

The usual rules of contract interpretation apply to insurance policies. See AIU Ins. Co. v. Superior Court, 51 Cal. 3d 807, 821-22 (1990). In interpreting insurance contracts, courts look first to the

"plain meaning or the meaning a layperson would ordinarily attach to it." Waller, 11 Cal. 4th at 18. If a provision is "capable of two or more constructions, both of which are reasonable," the provision is ambiguous. Id.

## A. Agreement Lifetime

Mt. Hawley argues Day's duty to extend its coverage for any "additional insured," including McCarthy, ended in 2009 when Day completed performance. Opp'n at 16-19. Because the Policy's period was June 10, 2014 to June 10, 2015, PSUF ¶ 13, Mt. Hawley argues McCarthy was not an additional insured.

Two documents make up Day's contract with the District: the Day-District Agreement itself, dkt. 14-2, and the General Conditions to Agreement between Day and the District (the General Conditions), dkt. 14-3. The Day-District Agreement provides Day "shall take out, prior to commencing work, and maintain, *during the life of this Agreement*, . . . the insurance coverages set forth in Article 16 of the General Conditions." Dkt. 14-2 ¶ 8 (emphasis added). There is no definition or other description of "the life of this Agreement" in the Day-District Agreement – or the General Conditions.

Mt. Hawley argues the phrase "during the life of this Agreement," means Day's obligation to insure McCarthy ceased when Day completed work (or at the very most when the District accepted the work). Opp'n at 17. McCarthy argues the Day-District Agreement's indemnity provision indicates the Agreement cannot expire on Day's completion of work. Mot. at 19-21. McCarthy also asserts the General Conditions' requirements for completed operations coverage clearly contemplates application to injuries or damage that occurred after the completion of Day's work. Id.

The Court finds the plain meaning of the "life of this Agreement" to be until performance by both parties is complete. See Guy F. Atkinson Co. of Cal. & Subsidiaries v. C.I.R., 814 F.2d 1388, 1392 (9th Cir. 1987) ("Completion and acceptance contemplate discharge by

6

performance of the contractual obligation, and consequent severance of the relationship between the parties.").

McCarthy argues that "[a]dditional insured requirements provided in a contract apply to policies in effect after the completion of work unless the language in the insurance provisions provide for a specific end date." Mot. at 19-20. In support of this proposition, McCarthy cites Costco Wholesale Corp. v. Tokio Marine & Nichido Fire Insurance Co. Ltd., No. B250794, 2015 WL 6470956 (Cal. App. Oct. 27, 2015).[2] In Costco Wholesale, the policy provided Costco would be named as an additional insured only "[s]o long as [Yokohama] agrees to sell or sells any products to [Costco]." Id. at *5 (emphasis omitted) (alterations in original). Costco had terminated Yokohama's contract and Yokohama had ceased selling any product to Costco years earlier, so the Court found Costco was not an additional insured. Id. McCarthy stretches the meaning of Costco Wholesale with its argument. Just because the Costco policy had a specific end date and therefore was terminated, does not mean that a policy without such a specific end date would stretch on forever.

McCarthy also argues that the life of the Day-District Agreement extends to the present day because Day's indemnity obligations extend to the present day. Mot. at 20-21. Section 7 of the Agreement, addressing Day's responsibility to indemnify the District and McCarthy, is not in any way temporally limited. Id. ¶ 7. That the contract did not temporally limit the indemnity provision but did limit the defense provision illustrates only that the two are not coextensive. See Costco Wholesale, 2015 WL 6470956, at *5 (differentiating between indemnity obligation that was specified to "survive termination of the Agreement" and an insurance obligation that did *not* state it would continue after termination of the agreement). Additionally, Costco Wholesale shows that the life of a contract is not defined by an

---

[2] The Court notes that unpublished California Court of Appeal cases cannot be cited to California courts.

indemnity provision, because an indemnity provision can continue after termination of the contract.  See id.

Finally, the fact that the contractual provision states an insured must maintain products and completed operations liability coverage does not "evidence[] an intent for the insurance requirement to survive the expiration of the parties' agreement," as McCarthy argues, dkt. 31 (McCarthy Reply) at 19.  It is standard for CGL policies to include "products-completed operations hazard," which covers liability for accidental bodily injury or property damage following completion of the insured's work or operations, but only until the policy expires.  See Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2020) § 7:1431 ("The 'products-completed operations hazard' does *not* extend the insurer's obligations beyond the policy period.  Thus, the 'bodily injury' or 'property damage' must occur after the insured has completed its 'operations' on the property and *during* the term of the insurance policy.") (collecting cases).

In addition, a reasonable person engaged in the construction industry would not have reasonably believed that a contractor/subcontractor would be required to maintain this coverage in perpetuity.

The Court finds McCarthy is not an additional insured under the Policy because Day had no duty to extend coverage to McCarthy during the coverage period.  It GRANTS summary judgment to Mt. Hawley on the breach of contract and declaratory judgment claims.

### B.   Bad Faith Claim

Mt. Hawley moves for summary judgment on McCarthy's bad faith claim.  The Court has found McCarthy is not an insured under the Policy.  Therefore, it does not have standing to bring this bad faith claim.  See Alex Robertson Co. v. Imperial Cas. & Indem. Co., 8 Cal. App. 4th 338, 346 (1992) (holding plaintiff's bad faith claim fails because plaintiff was not an insured under the policy).  The Court GRANTS Mt. Hawley's motion for summary judgment on McCarthy's bad faith claim.

## IV. CONCLUSION

The Court GRANTS Mt. Hawley's motion for summary judgment and DENIES McCarthy's motion for summary judgment.

IT IS SO ORDERED.

Date: February 24, 2021

*Dale S. Fischer*
Dale S. Fischer
United States District Judge